IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JENNIFER LE,

    Plaintiff,

  v.

CALIFORNIA NURSES ASSOC.,

    Defendant.
_____/

No. Civ. S-05-2625 DFL KJM

<u>Memorandum of Opinion<br>and Order</u>

    Plaintiff Jennifer Le alleges that defendant California Nurses Association ("CNA") illegally discriminated against her by failing to reasonably accommodate her religious objection to paying union dues. CNA moves to dismiss on the ground that Le lacks standing. The court GRANTS defendant's motion because CNA is not responsible for any damages Le may have suffered, and because there is an inadequate showing that CNA's challenged policy will cause Le any future harm.

                I.  <u>Facts and Procedural History</u>

    From January 2002 until January 2004, Le worked as an advice

nurse for Kaiser Permanente ("Kaiser"), which has a contract with CNA providing that most nursing positions be filled by CNA members. (Compl. ¶¶9-10, 32.) On January 28, 2004, Kaiser removed Le from her position as an advice nurse because she refused on religious grounds to facilitate the prescription of birth control pills. (Id. ¶ 9.) Le is a devout Roman Catholic. (Id. ¶ 12.)

Kaiser placed Le on unpaid, involuntary leave while she looked for another position within Kaiser that would not cause conflict with her religious beliefs. (Le Decl. ¶ 23.) Soon thereafter, on February 17, Kaiser offered Le a temporary, non-union position that she could fill while searching for a permanent job. (Id. ¶ 24.) She began in the temporary position in early April. (Id.)

Three months before the events just described, in October 2003, Le states that she discovered that CNA supports pro-choice causes and informed the union that she could not in good conscience continue paying union dues. (Id. ¶¶11-13.) Under the CNA-Kaiser contract, nurses with religious objections to supporting CNA may maintain their eligibility for employment by contributing to one of five designated charities instead of paying union dues. (Id. ¶ 16.) But Le claims that each of the five designated charities – the American Heart Association, American Cancer Society, AIDS Foundation, Planned Parenthood, and Doctors Without Borders – engage in activities that violate her

religious beliefs. (Id. ¶¶ 16-17.)  On October 25, 2003, she sent CNA a letter stating that she objected to the designated charities and asking that she be allowed to donate to the United Way instead. (Id. ¶¶ 13-14.)  Receiving no response, she re-sent the letter on November 19, 2003. (Id. ¶ 17.)  Still having received no substantive response, Le filed a complaint with the EEOC in late January 2004. (Le Decl. ¶ 22.)

Whether CNA eventually would have asked Kaiser to terminate Le for failing to donate to a designated charity cannot be known, as Kaiser removed Le from her position as advice nurse in January 2004 because she refused to facilitate the prescription of contraceptives. Le admits that CNA never sought her termination and never threatened to do so. (Le Dep. at 89-90.)

In the spring and summer of 2004, while working in the temporary position, Le applied for fourteen nursing jobs at Kaiser. (Id. ¶ 28.)  Her applications were unsuccessful. (Id. ¶ 29.)  In October 2004, she left Kaiser for a non-union position with Catholic Healthcare West ("CHW"). (Id. ¶ 35.)  Le's unverified complaint alleges that she is ineligible for promotion within CHW and that she has not applied for union positions with other area healthcare providers because their contracts with CNA make no provision for religious objectors. (Compl. ¶¶ 27-31.) The complaint also alleges that "in the future, Le intends to continue to seek positions at medical facilities in which she would be employed as a nurse which require CNA membership." (Id.

3

¶ 24.) In her deposition, however, Le acknowledges that if a healthcare organization's contract with CNA is silent as to religious objectors, a religious objector may remain eligible for unionized nursing positions by contributing an amount equal to union dues to any tax-qualified, non-religious, non-labor charity. (Le Dep. at 172-73.) Further, CNA has submitted a declaration from its membership manager, Nancy Bratchett ("Bratchett"), stating that "[i]f the collective bargaining agreement does not provide a list of charities, CNA will accommodate the nurse by allowing him or her to choose any non-labor, non-religious charity exempt from taxation." (Bratchett Decl. ¶ 5.) According to Bratchett, there are currently fourteen religious objectors working under the CNA-CHW contract. (Id. ¶ 7.) These objectors donate their dues to charities of their own selection, including food banks and animal-rights organizations. (Id.)

Le seeks damages for lost wages, a declaratory judgment holding that CNA's refusal to accommodate her choice of charity violates Title VII and FEHA, and preliminary and permanent injunctions against similar conduct by CNA in the future. (Compl. at 18-20.) Her unverified complaint states that "[i]n the future, [she] wishes to apply for employment as a nurse with medical facilities operated by Kaiser." (Compl. ¶ 25.) Nowhere in her declaration, however, does Le state that she would apply for union nursing positions if CNA were forced to alter its

4

policies.

On May 10, 2006, the court heard oral argument on CNA's original motion to dismiss. At the hearing, the court instructed Le to file a declaration that at the time the complaint was filed she was looking for other employment but was deterred by CNA's alleged failure to accommodate her religious beliefs. The court told Le "to be as specific as possible." (Tr. at 10; see also id. at 6, 17-18.) Le filed a declaration in support of standing on June 7, 2006. On June 16, the court denied CNA's motion to dismiss, but authorized CNA to file an additional motion to dismiss for lack of standing after taking Le's deposition. (Order at 5.)

CNA took Le's deposition on June 12, 2006. (Decl. of Pamela Allen in Support of Mot. at 2.) It filed the present motion to dismiss for lack of standing on July 19. Le filed a supplemental declaration in support of standing on August 2.

## II. Analysis

The requirement that a plaintiff have standing to bring a case in federal court derives from the "case" or "controversy" provision of Article III.

> This 'irreducible constitutional minimum' of standing requires: (1) that the plaintiff have suffered an 'injury in fact'-- an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of -- the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 167 (1997).

The burden of establishing standing rests on the party invoking federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). This burden is not merely a pleading requirement; rather, it requires the proponent of federal jurisdiction to produce the "degree of evidence required at the successive stages of the litigation." Id. (citations omitted). In ruling on a motion to dismiss for lack of standing, a court may properly consider evidence beyond the pleadings. See Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 109 n.22 (1979). A plaintiff may have standing to sue for damages and yet lack standing to sue for prospective relief. Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1041 n.1 (9th Cir. 1999).

This case presents two separate standing issues. The first is whether Le has standing to sue for lost wages resulting from her alleged inability to work in union nursing jobs after January 2004.[1] The second is whether she has standing to sue for declaratory and injunctive relief. For the reasons discussed below, the court holds that she has neither.

---

[1] Although the allegation does not appear in Le's complaint, Le later asserted in her declaration that CNA delayed her transfer to the temporary position at Kaiser thereby causing her to lose wages. Her counsel conceded that this was not a part of the claim in this case, however, when the court pointed out that Le did not raise this particular issue with the EEOC. (Tr. at 8-9.) Nevertheless, the claim reappears in Le's Opposition, filed months later. Because she conceded it, the court does not consider Le's claim that CNA somehow delayed her start date in the temporary Kaiser position.

6

A.     Le's Standing to Sue for Lost Wages

Le lacks standing to sue CNA for lost wages because any wages she might have lost are not "fairly traceable to the challenged action of the defendant." Bennett, 520 U.S. at 167. Le lost her job as an advice nurse with Kaiser because she refused to facilitate the prescription of oral contraceptives, not because she stopped paying union dues or objected to the five designated charities. She admits in her deposition that she has no "concrete" evidence that CNA had anything to do with Kaiser's decision to remove her as an advice nurse. (Le Dep. at 127.) The reasons she does give for suspecting CNA might have been involved -- that her dispute with CNA was ongoing when Kaiser refused to accommodate her objection to prescribing birth control, and her "very broad general . . . knowledge of unions having a lack of tolerance for people who didn't toe the line" -- amount to nothing more than speculation. (Id. at 127-28.)

Nor can the fact that Le has not worked in a union position since that time be attributed to CNA. First, she does not allege that CNA is responsible for her lack of success in securing any of the fourteen Kaiser nursing jobs she applied for in 2004. Indeed, Le admits in her deposition that CNA has nothing to do with Kaiser's hiring decisions. (Id. at 177.) Second, she admits that she could have taken a union job with any one of the many area healthcare providers whose contract with CNA does not have a provision for religious objectors. (Id. at 171.) She

7

admits that had she done so, she could have diverted her union dues to a charity of her choice and still enjoyed "all of the rights and benefits of the union contract, the wage rate, the fringe benefits, [and] the grievance procedure." (Id.) Le chose not to apply for any such jobs because she was "exhausted and mentally frustrated" from her disputes with Kaiser and CNA, not because CNA's policies with respect to religious objectors would have been a barrier. (Id. at 166.) Indeed, CNA has accommodated fourteen religious objectors who work at CHW, Le's current employer, by allowing them to contribute to the charities of their choice.[2]

Because any wages Le may have lost are traceable to Kaiser's actions or her own choices, not to CNA's conduct or policies, Le lacks standing to sue CNA for damages.

B. Le's Standing to Sue for Declaratory and Injunctive Relief

It is undisputed that CNA's policies do not prevent Le from working in union positions for area employers other than Kaiser. Therefore, with respect to those employers, a declaratory

---

[2] Le claims that these fourteen objectors may fall under a grandfather clause in the CNA-CHW contract that does not apply to her, and so their existence does not demonstrate that CNA would accommodate her if she applied for a union job at CHW. (Le Reply [sic] at 8.) This is grasping at straws. The provision of the CNA-CHW contract applicable to Le specifies that "Employees of the Employer who are subject to this Agreement shall be required as a condition of employment to maintain membership in the Union in good standing *subject to federal law*." (Id. at 9 (emphasis added).) As already mentioned, Le admits that where the contract does not designate a list of charities, federal law requires a union to accommodate religious objectors by allowing them to donate to the charity of their choice. Thus, CNA would be required to accommodate Le if she applied for a union job at CHW.

judgment or injunction against CNA would not benefit Le or redress any injury to her. Accordingly, the possibility that she might seek a union position outside of Kaiser does not give Le standing to seek prospective relief.

The only course of events in which CNA's policy might injure Le is if she were once again to hold a union position with Kaiser, which she has not done since 2004. If she did, CNA likely would require her to pay union dues or contribute to one of the five designated charities, all of which Le finds objectionable. Whether Le has standing to seek prospective relief turns on the likelihood that she will find herself working for Kaiser in a union position.

It is highly speculative that Le will again even apply for a union position with Kaiser. As already noted, a plaintiff has standing only if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Bennett, 520 U.S. at 167 (citation omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 108 (1983). A plaintiff seeking injunctive relief must further demonstrate "that he is in *immediate* danger of sustaining some direct injury." Feit v. Ward, 886 F.2d 848, 857 (7th Cir. 1989) (citation omitted and emphasis added).

Despite the court's admonition that Le's declaration should be as specific as possible about her intentions with respect to seeking union employment in the future, nowhere in her

declaration does she state that she would apply for a union job with Kaiser if she obtained the prospective relief she seeks. Moreover, although in her deposition Le acknowledges knowing that she already has the legal right to work in union positions outside of Kaiser without paying union dues or contributing to objectionable charities, she has not applied for any such positions over the last two years.[3]  Finally, despite her counsel's repeated assertions to the contrary at the oral argument on this motion, Le's state-court complaint against Kaiser does not seek reinstatement.

Le's failure to state under oath that she intends to seek union employment at Kaiser, her failure to seek union employment outside of Kaiser since 2004, and her failure to seek reinstatement in her state-court action against Kaiser together demonstrate that she does not intend to apply for union jobs at Kaiser if she wins prospective relief in this case.[4]  She offers

---

[3] Because no CNA policy prevents Le from getting union jobs outside of Kaiser, her reliance on Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365-66 (1977), is misplaced. (Reply at 11-12.)  In that case, the Court stated that "[w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."  Teamsters, 431 U.S. at 365-66. CNA's policy did not prevent Le from getting a union job outside of Kaiser, so applying would not have been futile.

[4] Because the court finds that Le has not come forward with any evidence that she intends to apply for a union job, her reliance on Gratz v. Bollinger, 539 U.S. 244 (2003), is misplaced. (Reply [sic] at 10-11.)  Although the Court in Gratz found that a student who had not actually applied for admission as a transfer student had standing to challenge a university's admissions criteria, it stated that even "if [the student] had

10

nothing to the contrary.  Therefore, she has failed to show that she is in immediate danger of suffering a direct injury as a result of CNA's policy.  Accordingly, she lacks standing to seek prospective relief.

## CONCLUSION

For the reasons stated above, CNA's motion to dismiss for lack of standing is GRANTED.

IT IS SO ORDERED.

Dated: 10/11/2006

_____
DAVID F. LEVI
United States District Judge

---

submitted a transfer application and been rejected, he would still need to allege an intent to apply again in order to seek prospective relief." Gratz, 539 U.S. at 261.  Because Le does not assert an intent to apply for union jobs in the future, Gratz does not support her argument.

11